IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHICARA GRAVITT, ) | |
| ) | |
| Plaintiff, ) | Case No. |
| ) | |
| v. ) | Judge |
| ) | Magistrate Judge |
| WELLPATH, LLC, ) | |
| ) | Jury Demand |
| Defendant. ) | |

# COMPLAINT

For her Complaint against Defendant Wellpath, LLC ("Defendant"), Plaintiff Shicara Gravitt ("Ms. Gravitt") states:

## PARTIES

1. Ms. Gravitt is a former employee of Defendant.

2. Defendant is a Delaware limited liability company with its principal place of business at 3340 Perimeter Hill Drive, Nashville, Tennessee 37211. Defendant may be served with process through its registered agent, Corporate Creations Network, Inc., 205 Powell Place, Brentwood, Tennessee 37027-7522.

## JURISDICTION AND VENUE

3. This is an action for equitable relief and damages for sex/gender, pregnancy/maternity, race, and family and caregiver responsibilities discrimination and retaliation and unequal pay for equal work brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), the Pregnancy Discrimination Act provisions of Title VII, 42 U.S.C. § 2000e(k) ("PDA"), the Pregnant Workers' Fairness Act of 2022, 42 U.S.C. § 2000gg, *et seq*. ("PWFA"), the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601,

*et seq.* ("FMLA"), the Equal Pay Act of 1963, 29 U.S.C. § 206, *et seq.* ("EPA"), 42 U.S.C. § 1981 ("§ 1981"), the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA"), the Tennessee Pregnant Workers' Fairness Act, Tenn. Code Ann. § 50-10-101, *et seq.* ("TPWFA"), the Tennessee Maternity and Adoption Leave Act, Tenn. Code Ann. § 4-21-408 ("TMALA"), and the Tennessee Equal Pay Act, Tenn. Code Ann. § 50-2-201, *et seq.* ("TEPA"). The Court has jurisdiction under 28 U.S.C. §§ 1331, 1332, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

4. Ms. Gravitt has met all conditions precedent to the filing of this Complaint. She timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on March 14, 2024. The EEOC issued her a Notice of Right to Sue on August 13, 2024.

**FACTS**

5. Ms. Gravitt is an African American female who worked for Defendant as an Agency Labor Manager on the Centralized Operations Team from May 2022 until it terminated her employment effective February 29, 2024.

6. Ms. Gravitt was qualified for her job with Defendant and performed it in an excellent manner. Defendant never informed her of any deficiencies in her performance and she never received any disciplinary action or performance improvement plans from Defendant.

7. In or about October 2022, Ms. Gravitt learned that she was being paid approximately $10,000 per year less than a Caucasian male Agency Labor Manager on the same work team, Jeff Rose, for the same or equal work.

8. Ms. Gravitt reported the unequal pay between her and Mr. Rose to her then-supervisor, Kamia Johnson, who reported it to Vice President Sean Smith. Mr. Smith advised Ms.

Gravitt and Ms. Johnson that he would review the budget and see about making Ms. Gravitt's pay equal to Mr. Rose's pay. Mr. Gravitt continued to report or inquire about the pay discrepancy between Mr. Rose and her but Defendant never did anything about it. As a result, Ms. Gravitt continued receiving substantially less pay than Mr. Rose for the same or equal work throughout her employment with Defendant.

9. Defendant is a covered employer under the PWFA, the FMLA, the TPWFA, and the TMALA and Ms. Gravitt was eligible for and entitled to maternity leave for the birth and care of her child in June 2023.

10. In April 2023, Ms. Gravitt informed her new supervisor, Vice President of Procurement Susan Patrick Harris, and others on her team that she was pregnant and would be taking maternity leave in mid-June 2023. Shortly thereafter, Ms. Harris removed Ms. Gravitt's direct report, Randi Beckingham, from her and placed Ms. Beckingham under Mr. Rose.

11. Mr. Rose then made unwelcome discriminatory comments to Ms. Gravitt regarding her pregnancy, including, "My daughter wasn't able to produce enough milk to breastfeed so don't be upset if you're not able to breastfeed your daughter." Mr. Rose also asked Ms. Gravitt how her baby was doing and, when Ms. Gravitt stated that the baby was doing well, he responded, "Just want to make sure because a friend was pregnant and the baby was doing great even at the very end and then at 40 weeks, the baby died and she had a stillbirth." These comments were unwelcome and offensive to Ms. Gravitt and made her uncomfortable.

12. Ms. Gravitt exercised maternity leave from June 16, 2023, to September 11, 2023. While she was on leave, Mr. Rose did not manage the workload well and did not perform certain required tasks that Ms. Gravitt had performed before her leave, including keeping systems updated

with current and detailed notes and ensuring that multiple job candidates were not hired for the same available job position at various prisons or jails that Defendant helped staff.

13. When she returned to work from maternity leave, Ms. Gravitt was left out of meetings and activities in which she had normally always been involved. These related to her work and to the agencies and worksites that she managed.

14. In January 2024, Ms. Harris referenced Ms. Gravitt's maternity leave in multiple areas in her written performance review and, unlike her prior supervisor, gave her mostly 2s ("meets expectations") instead of 3s ("exceeds expectations").

15. On February 19, 2024, Ms. Harris informed Ms. Gravitt that her position was being eliminated due to company finances. All other employees on the team, however, were permitted to keep their jobs. Ms. Gravitt asked Ms. Harris if there were any issues with her job performance; Ms. Harris assured her that there were none. Ms. Gravitt further asked Ms. Harris why Mr. Rose got to keep his position; Mr. Harris advised her that she could not give her a reason because she "d[id] not want to say something wrong."

16. After Ms. Gravitt's termination was announced to the team, Mr. Rose asked Ms. Beckingham during a February 21, 2024, team meeting how she felt about Ms. Gravitt's termination. Ms. Beckingham advised that she was upset that Ms. Gravitt was leaving because she contributed so much to the team. Mr. Rose responded that he was "sorry to say it," but that he was sure Mr. Gravitt would get another job soon "because she's a black female," and companies "have to hire black women to check a diversity box" or words very similar to those.      17.

17. Ms. Beckingham reported Mr. Rose's discriminatory comments to Defendant's Human Resources Department and stated that they made her uncomfortable and that she did not want to work with Mr. Rose any longer because of them.

18. Defendant did not discipline, suspend, or discharge Mr. Rose despite his reported discriminatory comments.

19. In addition to his discriminatory behavior weighing against his retention, Ms. Gravitt was significantly better qualified for the Agency Labor Manager position than Mr. Rose. She had superior technical skills, more relevant work experience, and contributed more to the success of the team. For example, Ms. Gravitt taught the entire team, including Mr. Rose, how to use Microsoft Excel spreadsheets; created the Excel spreadsheets that the Centralized Operations Team used, which the Finance Team also began using; created Standard Operating Procedures ("SOPs") for the team; and managed three of the four major projects the team had, among other things. One of these projects involved her creating and implementing a platform for jails to submit requests for staff, which Defendant still uses. Another involved transitioning/switching from the Kronos time keeping system to UKG, which Ms. Gravitt successfully completed.

20. In contrast, Mr. Rose only took the lead on one major project during his and Ms. Gravitt's employment called the MSP project. This involved locating an outside vendor to create a platform that could fulfill agency requests and handle certain billing tasks. When Defendant terminated Ms. Gravitt's employment, Mr. Rose still had not completed this project. Upon information and belief, the project did not go as planned and that the team's workload increased and/or will increase as a result.

21. Defendant treated Ms. Gravitt differently and less favorably in the terms, conditions, and privileges of employment than similarly situated (a) male employees, (b) non-African American employees, and (c) female employees who (i) did not become pregnant during their employment and request and exercise maternity leave for the birth and care of a child, (ii) did not request pregnancy and childcare related reasonable accommodations during their employment,

(iii) did not oppose or report sex- and pregnancy-based discriminatory comments, and/or (iv) did not have very young children and/or family and caregiver responsibilities to them.

22. Upon information and belief, Defendant has also discharged other female employees who became pregnant or who had children and caregiver responsibilities because their sex/gender, pregnancy, requests for maternity leave and pregnancy and childcare related reasonable accommodations, and/or caregiver responsibilities.

23. As described above, Defendant discriminated and retaliated against and discharged and refused to retain Ms. Gravitt in any capacity because of sex and pregnancy and/or race, her requesting and exercising maternity leave for the birth and care of a child, her requesting pregnancy and childcare related reasonable accommodations, and her family and caregiver responsibilities as a mother, in violation of Title VII, the PDA, the PWFA, the FMLA, § 1981, the THRA, the TPWFA, and the TMALA.

24. As described above, Defendant discriminated against Ms. Gravitt because of her sex and race in the terms, conditions, and privileges of employment by paying her less than similarly situated, male and non-African American employees for the same or equal work, in violation of the EPA, Title VII, § 1981, the TEPA, and the THRA.

25. Defendant's conduct as described in this Complaint was malicious and/or recklessly indifferent to Ms. Gravitt's federally protected rights and willful, entitling her to punitive damages under Title VII, the PDA, the PWFA, and § 1981, and liquidated damages under the EPA and the FMLA.

26. As a direct result of Defendant's discriminatory and retaliatory conduct, Ms. Gravitt has lost income and other privileges and benefits of employment; suffered embarrassment,

humiliation, emotional distress and anxiety, inconvenience, and loss of enjoyment of life; and incurred attorneys' fees, costs and litigation expenses.

## RELIEF REQUESTED

WHEREFORE, Ms. Gravitt respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits;

3. Compensatory damages for embarrassment, humiliation, emotional distress and anxiety, inconvenience, and loss of enjoyment of life;

4. Front pay and damages for lost benefits;

5. Punitive damages;

6. Liquidated damages;

7. Attorneys' fees, costs and litigation expenses;

8. Prejudgment interest and, if applicable, post judgment interest; and

9. Such other and further legal or equitable relief to which she may be entitled.

Respectfully submitted,

s/Douglas B. Janney III
Douglas B. Janney III (BPR No. 19112)
Law Office of Douglas B. Janney III
5115 Maryland Way
Brentwood, Tennessee 37027
(615) 742-5900
doug@janneylaw.com

Attorney for Plaintiff